JUAN JOSÉ TORRES, Plaintiff and Appellee, *v.* PORTO RICO RACING CORPORATION, Defendant and Appellant.

No. 4698.   Argued May 3, 1929.—Decided January 21, 1930.

424

*A. Díaz Viera* and *Manuel A. Martínez,* for appellant. *Leopoldo Tormes* and *F. M. Toro,* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

The Porto Rico Racing Corporation appeals from a judgment for damages arising out of a breach of contract through negligence. Appellant is engaged in the business of horse-racing and maintains a race-track for that purpose. The contract consisted of a betting ticket or combination filled in

by Juan José Torres on a printed form furnished by defendant and accepted by it, when returned by Torres, for the purposes and subject to the conditions hereinafter mentioned. The combination or list of names of the horses selected by Torres was preceded by a printed paragraph signed by him wherein he requested defendant or its duly authorized agent, Andrés Salazar, to send the combination to be played in the pool at the Quintana Race-Track subject to conditions enumerated on the reverse side. The printed paragraph signed by Torres recites that these conditions had been carefully read by him. The twelfth of these conditions reads as follows:

"The combination shall be sent by means of the Porto Rican Express Company or by automobile, and in case that they do not reach the hands of the administrator of the pool in time to be stamped, the price thereof shall be returned, there being no right to any other claim."

The Quintana Race-Track is in Río Piedras. It was the custom of the Ponce agent, Salazar, to attend the races in person and to take with him the combinations received from his clientele in Ponce. After reaching the race-track, it was his practice to transcribe these combinations upon other official blanks before presenting them to be stamped.

On the morning of the day when plaintiff's combination was to have been transcribed and presented for the purpose of being stamped as a pool ticket, Salazar arrived at the race-track in ample time to attend to the matter. Instead of doing so at once, he went to visit certain stables, and as a result of such delay plaintiff's combination was not transcribed and stamped. Otherwise it would have won a purse amounting to something over twelve thousand dollars.

The printed conditions on the back of the contract were worded by the corporation. It is familiar law that, as stated in 13 Corpus Juris 544, section 516:

"Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning

which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage. . . . .

"The rules just stated are of course peculiarly applicable where the contract is on a printed form prepared by one of the parties."

See also section 1255 of the Civil Code.

The stipulation and waiver contained in the latter part of the twelfth condition, *supra,* can not be torn from the context and considered alone.

The thought uppermost in the minds of the parties was the possibility of delay in transit and the consequent physical impossibility of transcribing the Ponce tickets after arrival at the race-track and before the closing of the pool. It was to guard against this possibility and none other that the corporation in preparing its printed form stipulated that if the ticket should not reach the hands of the administrator of the pool in time to be stamped, the price thereof would be returned to the bettor without further responsibility on the part of the corporation.

The transcribing of the provisional ticket upon other official blanks obtainable only at the race-track was a condition precedent to the stamping thereof. The corporation, when it accepted the ticket in provisional form, assumed the obligation of converting it into a pool ticket. The bettor who paid for his ticket in Ponce had no reason to suppose that the corporation intended to evade that obligation by disclaiming all responsibility for the negligence of its agents or employees in this regard under the terms of the twelfth condition. If such was the intention of the corporation at the time of drafting the printed form, it would have been an easy matter to say so in plain and unmistakable words. To reach such an intention into the contract now before us, by following the letter of the twelfth condition and disregard-

ing all else, would (to paraphrase Corpus Juris, *supra*) permit the corporation to induce its patrons to contract with it on the supposition that its words mean one thing, while it hopes the court will adopt a construction by which they would mean another thing more to its advantage.

We therefore hold that the ticket in question reached the hands of the administrator of the pool in time to be stamped within the meaning of the twelfth condition when it reached the race-track in the custody of defendant's agent in ample time to be transcribed by him or by other agents or employees of the corporation in accordance with the terms of the contract and presented for stamping and deposit in the pool.

The district court admitted in evidence a letter written by the secretary-treasurer of the corporation and signed by him as general manager. The admission of this letter is assigned as error. The letter was in reply to an inquiry from a citizen of Ponce and stated that Andrés Salazar was the agent of the corporation in Ponce. The argument seems to be that the officer of the corporation who signed as general manager was not such manager, that the admissions of a general manager would not bind the corporation unless made while in the discharge of his duties as manager and that the best evidence as to the existence of an agency in Ponce would have been a certified copy of a resolution by the board of directors, or a statement by the secretary of the corporation, or a certificate from the office of the Insular Racing Commission. The only authorities cited are: 14 Corpus Juris 849, section 1291; Id. 920, section 1435; 3 L.R.A. (N.S.) 551, and 7 R.C.L. 660, 661, section 662. None of these authorities goes so far as to say that a corporation may repudiate a statement made by its secretary, in response to an inquiry addressed to the corporation, merely because the secretary signed as general manager, and not as secretary. Much less do they hold that a corporation may evade all responsibility for an agency thus vouched for by its secretary

after having reaped the profits derived from that agency as a result of an assurance so given to the public.

When the letter was offered in evidence the only grounds for objection were that the writer thereof, while admitting that he wrote the letter, had stated in a deposition that he was not the manager of the defendant corporation; that the letter was addressed to a third person who was not a party to the action, and that the document had not been duly identified. The second and third of these objections have been abandoned and the question as to what might have been better evidence as to the existence of an agency in Ponce can not be raised for the first time on appeal.

Another contention is that the district court erred in finding that Andrés Salazar was an agent of the defendant corporation. The letter already mentioned was not the only evidence tending to establish the relationship of principal and agent. The evidence *aliunde* was ample. Even if the court below had erred in admitting the letter, or if that letter had never been written, there could be no hesitation about affirming the judgment. In any event and aside from any question of actual agency, it was enough (as pointed out by the trial judge in his statement of the case and opinion) that Salazar had been clothed with apparent authority and held out to the public by the corporation as its agent.

Appellant also complains of the admission in evidence of a printed circular, because it was not the best evidence and because the defendant corporation was not shown to have had any connection therewith. Only the first of these two grounds was suggested at the trial and the objection was properly overruled for the reason that the printer who identified the circular had already testified to the destruction of the original.

The only objection made in the court below to the admission of certain testimony given by a witness named Domingo Quevedo, Jr., was on the ground that the same was immaterial. It was not immaterial, but if it had been, the error

in overruling the objection could not be successfully urged on appeal for the reason that no exception was taken to the announcement by the trial judge that the evidence would be admitted upon the understanding that it might be later stricken if it should prove to be immaterial. We quite agree with appellant that objections to the admission of evidence should be definitely disposed of when made and that the tentative admission of objectionable testimony over the protest of a party is not the proper practice, but here there was no protest.

Other questions going to the sufficiency of the complaint and of the evidence in so far as not already disposed of, do not demand extended discussion. The most serious of these contentions was the matter first above discussed and decided. The one most stressed by appellant, however, is that the contract described in the complaint and hereinabove outlined was a gambling contract.

Defendant was not operating a pool "or a system known as *pari mutuel,*" within the meaning of sections 38 and 39 of the Racing Act, approved May 4, 1927, Laws of that year, pp. 206, 224. The combination blank in question was never "stamped or registered" within the meaning of section 40 of that Act, but was to be so stamped and registered after being transcribed and properly prepared for that purpose by defendant. The slip of paper delivered to Torres was not the "ticket, share or interest, or any paper or ticket in the form of a card presumed to be or representing *pari mutuel,* or any combination depending on the result of any horse race or races," referred to in section 44. Defendant did not "open, establish or maintain" in Ponce "any office or place for the preparation of tickets or lists, schedules or combinations *presumed to be or representing any share or interest* in any pool, *banca alemana* or combination depending on the result of any horse race or races," within the prohibition of section 46. What the corporation undertook to do was to provide such a ticket or combination after preparation

thereof by the said corporation upon timely arrival of the provisional papers or executory contracts entered into in Ponce. In any event, if the contract now before us could be construed as a sale of the ticket or combination contemplated by section 46, there was no presumption and Torres had no reason to assume that the racing corporation had opened the Ponce office without the approval of the Racing Commission and therefore in violation of the provision contained in section 46. The want of such approval (had it been pleaded by defendant) might or might not have been a legitimate ground of defense, but it was not incumbent on plaintiff to allege or prove as a part of his cause of action that defendant had obtained the express approval of the Racing Commission as a condition precedent to the opening of the Ponce office.

The judgment appealed from must be affirmed.